**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**PINE BLUFF DIVISION**

| | |
|---|---|
| LARRY WAYNE JONES, ADC #70147 | * |
| | * |
| Plaintiff, | * |
| v. | * |
| | *    No. 5:12CV00287-SWW-JJV |
| CURTIS MEINZER, Deputy Warden, | * |
| Varner Super Max, ADC; *et al.,* | * |
| | * |
| Defendants. | * |

**PROPOSED FINDINGS AND RECOMMENDATIONS**

**INSTRUCTIONS**

The following recommended disposition has been sent to United States District Judge Susan Webber Wright. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in a waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a new hearing for this purpose before either the District Judge or Magistrate Judge, you must, at the time you file your written objections, include the following:

    1.    Why the record made before the Magistrate Judge is inadequate.

    2.    Why the evidence to be proffered at the new hearing (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3. The details of any testimony desired to be introduced at the new hearing in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the new hearing.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing. Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## **DISPOSITION**

Mr. Jones is an inmate in the Varner Supermax Unit (VSM) of the Arkansas Department of Correction (ADC). He filed a *pro se* Complaint (Doc. No. 2) pursuant to 42 U.S.C. § 1983, alleging Defendants violated his Eighth Amendment rights. Defendants filed a Motion for Summary Judgment (Doc. No. 19) and Mr. Jones responded (Doc. No. 25). After viewing the evidence in a light most favorable to Mr. Jones, the Court finds there are no genuine issues of material fact for trial and Defendants are entitled to summary judgment as a matter of law.

**I.     SUMMARY JUDGMENT STANDARD**

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to summary judgment as a matter of law. FED. R. CIV. P. 56. In deciding whether to grant a motion for summary judgment, the Court views the evidence and the inferences which must be reasonably drawn from the evidence in a light most favorable to the nonmoving party. *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996). However, when ruling on a motion for summary judgment, the Court "is not obligated to wade through and search the entire record for some specific facts which might support the nonmoving party's claim, rather the nonmoving party must designate the specific

genuine issues of material fact that preclude summary judgment." *Holland v. Sam's Club*, 487 F.3d 641, 644 (8th Cir. 2007) (internal quotation marks omitted). To establish a genuine issue of material fact, the nonmoving party may not merely point to unsupported self-serving allegations, instead, the nonmoving party, must substantiate his or her allegation with sufficient probative evidence that would permit a finding in the nonmoving party's favor. *Residential Funding Co., LLC v. Terrace Mortgage Co.*, 725 F.3d 910, 915 (8th Cir. 2013). Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

**II.    UNDISPUTED FACTS**

Mr. Jones was a fifty-year old inmate at VSM on December 30, 2011. (Doc. No. 20 ¶ 1; Doc. No. 27 ¶ 1.) He had an extensive disciplinary record with a history of escape attempts. (Doc. No. 20 ¶ 5.) According to Mr. Jones, he was in poor health with chronic hypertension, hypothyroidism, gastroesophageal reflux disease, and severe degenerative arthritis in his left knee. (Doc. No. 27 ¶ 1.)

Curtis Meinzer was the Deputy Warden in charge of operations at VSM. (Doc. No. 27 ¶ 2). Raymond Naylor was the Administrator of the ADC's Internal Affairs Division (Doc. No. 2 ¶ 28) and Chris Coody and Thomas Rowland were his assistants. (*Id.*)

On December 30, 2011, ADC officials found eight hacksaw blades during a search of Mr. Jones's cell.[1] (Doc. No. 20 ¶ 6; Doc. No. 27 ¶ 2). As a result, he was placed on behavioral control for seventy-two hours and moved to Isolation 4. (Doc. No. 20 ¶¶ 7, 13). Mr. Jones's cell had a concrete bunk and table and a steel commode and sink. (Doc. No. 27 ¶ 5). He states it had not been

---

[1]The blades were broken into thirty-two smaller blades and were hidden in the wall by plaster that was later determined to be deodorant. (Doc. No. 21-2 at 1).

properly cleaned or sanitized when he arrived. (*Id.*) Mr. Jones was deprived of a mattress, bedding, clothing, soap, and a cup. (Doc. No. 27 ¶ 3). He was provided a blanket, a pair of boxers, and a small quantity of toilet paper. (Doc. No. 21-3 at 2; Doc. No. 27 ¶ 3). He states his hypothyroidism makes him extremely sensitive to cold and he felt as if he were freezing. (Doc. No. 27 ¶ 5).

Mr. Jones informed Deputy Warden Meinzer many times that he suffered from hypothyroidism and the concrete bunk was too cold for him lie on without either a proper mattress, bedding, clothing, or heat. (*Id.*, ¶ 7). He also informed Meinzer that his isolation cell was filthy and he needed soap to wash his hands. (Doc. No. 27 ¶ 7). Meinzer responded that the conditions in isolation were part of his punishment but he could address his concerns regarding hypothyroidism to the medical staff. (*Id.*)

Mr. Jones states he complained to Officers Naylor, Coody and Rowland, but they would only intervene if he disclosed how he obtained the hacksaw blades. (*Id.* ¶ 10). When Mr. Jones refused to say how he obtained the blades, the officers stated Deputy Warden Meinzer was justified in keeping Mr. Jones confined under the conditions in isolation. (*Id.*)

According to Mr. Jones, due to the conditions in his isolation cell, he was unable to lie down and slept in a contorted-sitting position, causing permanent nerve damage. (Doc. No. 27 ¶ 12). He also has recurring headaches and contracted an infection that caused several episodes of bloody diarrhea. (*Id.* ¶¶ 12-13).

### III. ANALYSIS

Mr. Jones asserts that Defendants violated his Eighth Amendment rights when they subjected him to cruel and unusual punishment. (Doc. No. 2 at 4). He also makes a state tort claim. (*Id.*) He sued Defendants in their official and individual capacities (*Id.* at 2) and seeks declaratory, injunctive and monetary relief. (*Id.* at 24-28.)

### A. Sovereign Immunity

Defendants argue that Mr. Jones's official capacity claims for monetary damages are barred by sovereign immunity. The Eleventh Amendment bars suits against states for monetary damages. *Edelman v. Jordan*, 415 U.S. 651, 662-663 (1974); *Dakota, Minnesota & Eastern R.R. Corp. v. S. D.*, 362 F.3d 512, 516 (8th Cir. 2004); *Hadley v. North Ark. Cmty. Tech. Coll.*, 76 F.3d 1437, 1438 (8th Cir. 1996). Section 1983 does not override Eleventh Amendment immunity. *Hadley*, 76 F.3d at 1438. A suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the state. *See Printz v. U.S.*, 521 U.S. 898, 930 (1997); *Hafer v. Melo*, 502 U.S. 21, 25 (1991). Thus, the Eleventh Amendment has been construed to also prohibit § 1983 suits seeking monetary damages from a state official in his or her official capacity. *See Treleven v. Univ. of Minn.*, 73 F.3d 816, 818 (8th Cir. 1996). For these reasons, the Court finds that Mr. Jones's official capacity claims for monetary damages should be DISMISSED.

### B. Qualified Immunity

Defendants also argue they are entitled to qualified immunity on Mr. Jones's Eighth Amendment claims. Specifically, they argue that Mr. Jones fails to establish a violation of his constitutional rights and no reasonable officer could have known that assigning an inmate with hypothyroidism to behavior control would violate a constitutional right. (Doc. No. 21 at 6).

Qualified immunity shields government officials performing discretionary functions from liability for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is a question of law, not a question of fact. *McClendon v. Story Cnty. Sheriff's Office*, 403 F.3d 510, 515 (8th Cir. 2005). Thus, issues concerning qualified immunity are appropriately resolved on summary judgment. *See Mitchell v. Forsyth*, 472 U.S. 511,

526 (1985) (the privilege is "*an immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial").

To determine whether defendants are entitled to qualified immunity, the courts generally consider two questions: (1) whether the facts alleged or shown, construed in the light most favorable to the plaintiff, establish a violation of a constitutional or statutory right; and (2) whether that right was so clearly established that a reasonable official would have known that his or her actions were unlawful. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *see also Saucier v. Katz*, 533 U.S. 194, 201 (2001).[2] "Qualified immunity is appropriate only if no reasonable fact-finder could answer yes to both of these questions." *Nelson v. Corr. Med. Services*, 583 F.3d 522, 528 (8th Cir. 2009).

The United States Supreme Court precedent establishes:

> [T]he right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

*Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

For the reasons stated below, the Court finds that Defendants did not violate Mr. Jones's Eighth Amendment rights and they are entitled to qualified immunity.

### C.    Eighth Amendment

Defendants argue that assigning Mr. Jones to behavior control for seventy-two hours does not violate the Constitution. The Court agrees.

The treatment a prisoner receives in prison and the conditions under which he is confined

---

[2]Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Nelson*, 583 F.3d at 528 (quoting *Pearson*, 555 U.S. at 236).

are subject to scrutiny under the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 832 (1970). The Constitution, however, does not mandate comfortable prisons and only those deprivations denying the minimal civilized measures of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation. *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). The Eighth Amendment imposes a duty on prison official to provide humane conditions of confinement; they must ensure that prisoners receive adequate food, clothing, shelter, and medical care. *Farmer*, 511 U.S. at 832. Some conditions of confinement may establish an Eighth Amendment violation in combination, when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single identifiable human need such as food, warmth, or exercise. *Wilson*, 501 U.S. at 304.

To establish that prison officials violated a prisoner's Eighth Amendment rights, the prisoner must show: (1) the deprivation alleged is sufficiently serious and resulted in the denial of the minimal civilized measures of life's necessities, and (2) the prison officials acted with deliberate indifference, disregarding an excessive risk to the prisoner's health or safety. *Brown v. Nix*, 33 F.3d 951, 955 (8th Cir. 1994).

        1.        Minimal Civilized Measures of Life's Necessities

According to Mr. Jones, he spent seventy-two hours in an unsanitary cell that lacked adequate heating. (Doc. No. 27 ¶ 5). He was without a mattress, bedding, clothing, soap, and a cup.

The denial of a mattress, bedding, clothing, soap, or a cup did not deprive Mr. Jones of the minimal civilized measures of life's necessities. Although clearly uncomfortable, Plaintiff's placement on behavior control did not amount to an Eighth Amendment violation. *See O'Leary v. Iowa State Men's Reformatory*, 79 F.3d 82 (8th Cir. 1996) (no Eighth Amendment violation by prison officials for denying inmates underwear, blankets, a mattress and exercise over a four-day

period); *see also Williams v. Delo*, 49 F.3d 442 (8th Cir. 1995) (no constitutional violation for inmate confined to a strip cell for four days without bedding, a mattress, soap and other hygiene items). Additionally, placement in the unsanitary cell for this period of time does not amount to a constitutional violation. *See Hutto v. Finney*, 437 U.S. 678, 686-87 (1978).

Regarding temperature, the court examines several factors, such as the severity of the cold, its duration, whether the prisoner had an alternative means to protect himself from the cold, the adequacy of such alternatives, as well as whether the prisoner had to endure other uncomfortable conditions in addition to the cold temperatures. *Dixon v. Godinez*, 114 F.3d 640, 644 (7th Cir. 1997).

The Court first notes that Plaintiff was provided a blanket. (Doc. No. 2 at 6.) Therefore, he had alternative means to protect himself from the alleged cold and his claim should be dismissed on this basis alone.

Additionally, Defendants assert that Mr. Jones fails to show the temperature in his isolation cell was different than his previous cell. (Doc. No. 21 at 4). In support, Defendants provide the daily temperature readings for VSM and a declaration from Maintenance Director Garry Grant. (Doc. Nos. 21-4, 21-5). On December 30, 2011, the temperature in the previous cell block was between seventy and seventy-two degrees and the temperature in Isolation 4 was seventy degrees. (Doc. No. 21-4.) Because of the holiday, temperature readings were not taken from December 31, 2011, to January 2, 2012. (Doc. No. 21-5 ¶ 5.) Mr. Grant states the temperature in Isolation 4 was within the acceptable range (*Id.* ¶ 4) and problems with the heating system would have been documented and addressed immediately. (Id. ¶ 6.) During the New Year's holiday, no maintenance was performed on the heating system. (*Id.* ¶ 7).

Viewing the evidence in a light most favorable to Plaintiff, the Court concludes Mr. Jones

was not subjected to unconstitutional conditions when on behavior control.

### 2. Deliberate Indifference

The Court also finds that Mr. Jones fails to show Defendants acted with deliberate indifference. Deliberate indifference is a state of mind more blameworthy than mere negligence. *Tribble v. Ark. Dep't of Human Servs.*, 77 F.3d 268, 270 (8th Cir. 1996). A prison official acts with deliberate indifference if he knows of and disregards a substantial risk of serious harm to an inmate. *Reynolds v. Dormire*, 636 F.3d 976, 979 (8th Cir. 2011). Deliberate indifference is comprised of two components, the objective component, which questions whether a substantial risk to the prisoner's safety existed and the subjective component, which questions whether prison official had knowledge of the risk but nevertheless disregarded the risk. *Id.* The subjective component requires that the official was both aware of the facts from which the inference could be drawn that a substantial risk of serious harm existed, and he must also draw the inference. *Davis v. Oregon Cnty., Missouri*, 607 F.3d 543, 548-49 (8th Cir. 2010).

Mr. Jones asserts that when he stated he had hypothyroidism, Defendants had a duty to verify his condition. Even if such a duty exists, an attempt to verify Mr. Jones's condition would have been fruitless. Defendants provide two grievances, VSM12-00122 and VSM12-00915, filed by Mr. Jones. (Doc. Nos. 21-6, 21-7.) The Warden's response to VSM12-00122 states that at the time in question, hypothyroidism was not documented in Jones's file. (Doc. No. 21-7.) The response to VSM12-00915 shows Mr. Jones did not have medical restrictions regarding the temperature in his cell. (Doc. No. 21-6.)

In response to the Motion for Summary Judgment (Doc. No. 25), Mr. Jones fails to present specific facts showing there is a genuine issue of material fact for trial. The evidence before the Court fails to show Defendants knew of and disregarded a substantial risk of harm to Mr. Jones. The

Court, therefore, finds that Mr. Jones fails to establish that Defendants acted with deliberate indifference.

Because Mr. Jones fails to establish that the Defendants deprived him of the minimal civilized measures of life's necessities or that the Defendants acted with deliberate indifference, he fails to establish a violation of his Eighth Amendment rights. Therefore, the Court finds there are no genuine issues for trial and Defendants are entitled to summary judgment as a matter of law on his Eighth Amendment claims.

### D. Claim for Injunctive Relief

To prevail on his claim for injunctive relief, Mr. Jones must show, among other things, that prison officials knowingly disregarded, were disregarding, and would continue to disregard an objectively intolerable risk of harm to his health or safety. *Williams*, 49 F.3d at 447. As discussed above, Mr. Jones fails to present specific facts showing that Defendants knew that a risk of harm to his health or safety existed. Therefore, his claim for injunctive relief should also be DISMISSED.

### E. State Law Claim

In his Complaint, Mr. Jones also asserts that Defendants violated "the Arkansas tort of cruelty or its equivalent." Pursuant to 28 U.S.C. § 1367(c)(3), the Court should decline to exercise supplemental jurisdiction over Mr. Jones's state law claim and that claim should be DISMISSED.

## IV. CONCLUSION

IT IS, THEREFORE, RECOMMENDED that:

1. Defendants' Motion for Summary Judgment (Doc. No. 19) should be GRANTED and Plaintiff's Complaint (Doc. No. 2) should be DISMISSED with prejudice.

2. All pending motions should be rendered moot.

3. The Court should certify, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma*

*pauperis* appeal from an order adopting these recommendations and the accompanying judgment would not be taken in good faith.

IT IS SO ORDERED this 11th day of October, 2013.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE